**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| STATE OF CALIFORNIA, by and through Attorney General Xavier Becerra, *Plaintiff-Appellee*, v. ALEX M. AZAR II, in his Official Capacity as Secretary of the U.S. Department of Health & Human Services; U.S. DEPARTMENT OF HEALTH & HUMAN SERVICES, *Defendants-Appellants.* | No. 19-15974 D.C. No. 3:19-cv-01184-EMC |

ESSENTIAL ACCESS HEALTH,
INC.; MELISSA MARSHALL,
M.D.,
            *Plaintiffs-Appellees*,

v.

ALEX M. AZAR II, Secretary
of U.S. Department of Health
and Human Services; UNITED
STATES DEPARTMENT OF
HEALTH AND HUMAN
SERVICES,
            *Defendants-Appellants.*

No. 19-15979

D.C. No.
3:19-cv-01195-EMC

STATE OF OREGON; STATE OF
NEW YORK; STATE OF
COLORADO; STATE OF
CONNECTICUT; STATE OF
DELAWARE; DISTRICT OF
COLUMBIA; STATE OF
HAWAII; STATE OF ILLINOIS;
STATE OF MARYLAND;
COMMONWEALTH OF
MASSACHUSETTS; STATE OF
MICHIGAN; STATE OF
MINNESOTA; STATE OF
NEVADA; STATE OF NEW
JERSEY; STATE OF NEW
MEXICO; STATE OF NORTH
CAROLINA; COMMONWEALTH
OF PENNSYLVANIA; STATE OF
RHODE ISLAND; STATE OF

No. 19-35386

D.C. Nos.
6:19-cv-00317-MC
6:19-cv-00318-MC

VERMONT; COMMONWEALTH
OF VIRGINIA; STATE OF
WISCONSIN; AMERICAN
MEDICAL ASSOCIATION;
OREGON MEDICAL
ASSOCIATION; PLANNED
PARENTHOOD FEDERATION OF
AMERICA, INC.; PLANNED
PARENTHOOD OF
SOUTHWESTERN OREGON;
PLANNED PARENTHOOD
COLUMBIA WILLAMETTE;
THOMAS N. EWING, M.D.;
MICHELE P. MEGREGIAN,
C.N.M.,
            *Plaintiffs-Appellees*,

v.

ALEX M. AZAR II; UNITED
STATES DEPARTMENT OF
HEALTH AND HUMAN
SERVICES; DIANE FOLEY;
OFFICE OF POPULATION
AFFAIRS,
            *Defendants-Appellants.*

|  |  |
|---|---|
| STATE OF WASHINGTON; NATIONAL FAMILY PLANNING AND REPRODUCTIVE HEALTH ASSOCIATION; FEMINIST WOMEN'S HEALTH CENTER; DEBORAH OYER, M.D.; TERESA GALL, *Plaintiffs-Appellees*, | No. 19-35394 |
|  | D.C. Nos. 1:19-cv-03040-SAB 1:19-cv-03045-SAB |
| v. | |
| ALEX M. AZAR II, in his official capacity as Secretary of the United States Department of Health and Human Services; UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES; DIANE FOLEY, MD, in her official capacity as Deputy Assistant Secretary for Population Affairs; OFFICE OF POPULATION AFFAIRS, *Defendants-Appellants.* | ORDER ON MOTIONS FOR STAY PENDING APPEAL |

Filed June 20, 2019

Before: Edward Leavy, Consuelo M. Callahan,
and Carlos T. Bea, Circuit Judges.

Per Curiam Order

# SUMMARY[*]

---

### Civil Rights

The panel granted the United States Department of Health and Human Services' motion for a stay pending appeal of three preliminary injunction orders issued by district courts in three states which enjoined from going into effect the 2019 revised regulations to Title X of the Public Health Service Act, pertaining to pre-pregnancy family planning services.

In 1970, Congress enacted Title X to create a limited grant program for certain types of pre-pregnancy family planning services. Section 1008 of Title X provides that none on the funds appropriated under the subchapter shall be used in programs where abortion is a method of family planning. In 1988, the Department of Health and Human Service promulgated regulations forbidding Title X grantees from providing counseling or referrals for, or otherwise encouraging, promoting, or advocating abortion as a method of family planning. Several years later, the Department suspended the 1988 regulations and promulgated new Title X regulations, which re-interpreted § 1008 as requiring, among other things, that Title X grantees provide "nondirective" abortion counseling and abortion referrals upon request. In 2019, the Department once again revised its Title X regulations, promulgating regulatory language (the "Final Rule") that substantially reverted back to the 1988 regulations. A group of state governments and existing

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Title X grantees challenged the Final Rule in federal court in three states (California, Washington and Oregon), and sought preliminary injunctive relief. The district courts in all three states granted plaintiffs' preliminary injunction motions on nearly identical grounds. The Department appealed and sought to stay the injunctions pending a decision of the merits of its appeals.

The panel first noted that the Final Rule was a reasonable interpretation of § 1008. The panel further stated that the Supreme Court's decision in *Rust v. Sullivan*, 500 U.S. 173 (1991), largely foreclosed any attempt to argue that the Final Rule was not a reasonable interpretation of the text of § 1008. The panel rejected the district courts' conclusions that two intervening laws, a Health and Human Services appropriations rider and an ancillary provision of the Affordable Care Act, Title I § 1554, rendered the Final Rule invalid. The panel concluded that neither law impliedly repealed or amended § 1008. The panel further held that Final Rule's counseling and referral requirements was not in conflict with the appropriations rider's nondirective pregnancy counseling mandate. Finally, the panel held that even if plaintiffs properly preserved their Affordable Care Act challenge, it was likely that § 1554 did not affect § 1008's prohibition on *funding* programs where abortion was a method of family planning.

The panel held that, in light of the narrow permissible scope of the district court's review of the Department's reasoning under the arbitrary and capricious standard, the Department was likely to prevail on its argument that the district court erred in concluding that the Final Rule's enactment violated the Administrative Procedure Act.

The panel held that the remaining factors also favored a stay pending appeal, noting that the Department and the public at large are likely to suffer irreparable harm in the absence of a stay, which were comparatively greater than the harms plaintiffs were likely to suffer.

## COUNSEL

Jaynie Lilley, Katherine Allen, and Michael S. Raab, Appellate Staff; Brinton Lucas, Senior Counsel; Hashim M. Mooppan, Deputy Assistant Attorney General; Joseph H. Hunt, Assistant Attorney General; for Defendants-Appellants.

Anna Rich, Ketakee Kane, and Brenda Ayon Verduzco, Deputy Attorneys General; Kathleen Boergers, Supervising Deputy Attorney General; Michael L. Newman, Senior Assistant Attorney General; Xavier Becerra, Attorney General; Office of the Attorney General, Oakland, California; for Plaintiff-Appellee State of California.

Michelle Ybarra, Sarah Salomon, Sophie Hood, and Justine Sessions, Keker Van Nest & Peters LLP, San Francisco, California, for Plaintiffs-Appellees. Essential Access Health, Inc. and Melissa Marshall, M.D.

Judith N. Vale, Senior Assistant Solicitor General; Barbara D. Underwood, Solicitor General; Letitia James, Attorney General; Office of the Attorney General, Albany, New York; Benjamin Gutman, Solicitor General; Jona J. Maukonen, Senior Assistant Attorney General; Ellen F. Rosenblum, Attorney General; Office of the Attorney General, Salem, Oregon; Phil Weiser, Attorney General, State of Colorado; William Tong, Attorney General, State of Connecticut;

Kathy Jennings, Attorney General, State of Delaware; Karl A. Racine, Attorney General, District of Columbia; Clare E. Connors, Attorney General, State of Hawaii; Kwame Raoul, Attorney General, State of Illinois; Brian E. Frosh, Attorney General, State of Maryland; Maura Healey, Attorney General, Commonwealth of Massachusetts; Dana Nessel, Attorney General, State of Michigan; Keith Ellison, Attorney General, State of Minnesota; Aaron Ford, Attorney General, State of Nevada; Gurbir Singh Grewal, Attorney General, State of New Jersey; Hector Balderas, Attorney General, State of New Mexico; Josh Stein, Attorney General, State of North Carolina; Josh Shapiro, Attorney General, Commonwealth of Pennsylvania; Peter F. Neronha, Attorney General, State of Rhode Island; T.J. Donovan, Attorney General, State of Vermont; Mark R. Herring, Attorney General, Commonwealth of Virginia; Josh Kaul, Attorney General, State of Wisconsin; for Plaintiffs-Appellees State of Oregon, State of New York, State of Colorado, State of Connecticut, State of Delaware, District of Columbia, State of Hawaii, State of Illinois, State of Maryland, Commonwealth of Massachusetts, State of Michigan, State of Minnesota, State of Nevada, State of New Jersey, State of New Mexico, State of North Carolina, Commonwealth of Pennsylvania, State of Rhode Island, State of Vermont, Commonwealth of Virginia, and State of Wisconsin.

Alan E. Schoenfeld, Wilmer Cutler Pickering Hale and Dorr LLP, New York, New York; Joshua M. Koppel, Albinas J. Prizgintas, Kimberly A. Parker, and Paul R.Q. Wolfson, Wilmer Cutler Pickering Hale and Dorr LLP, Washington, D.C.; Kennon Scott, Per A. Ramfjord, and Jeremy D. Sacks, Stoel Rives LLP, Portland, Oregon; Erin G. Sutton, Leonard A. Nelson, and Brian D. Vandenberg, Office of General Counsel, American Medical Association, Chicago, Illinois;

Mark Bonnano, General Counsel, Oregon Medical Association, Portland, Oregon; Carri Y. Flaxman and Helene T. Krasnoff, Planned Parenthood Federation of America Inc., Washington, D.C.; for Plaintiffs-Appellees American Medical Association; Oregon Medical Association; Planned Parenthood Federation of America, Inc.; Planned Parenthood of Southwestern Oregon; Planned Parenthood Columbia Willamette; Thomas N. Ewing, M.D.; Michele P. Megregian, C.N.M.

Kristin Beneski, Paul M. Crisalli, and Jeffrey T. Sprung, Assistant Attorneys General; Norah G. Purcell, Solicitor General; Robert Ferguson, Attorney General; Office of the Attorney General, Seattle, Washington; for Plaintiff-Appellee State of Washington

Fiona Kaye, Brigitte Amiri, Elizabeth Deutsch, Anjali Dalal, and Ruth E. Harlow, American Civil Liberties Union Foundation; Emily Chiang, American Civil Liberties Union Foundation of Washington; Joe Shaeffer, MacDonald Hoague & Bayless, Seattle, Washington; Brandon D. Harper, Jennifer B. Sokoler, and Nicole M. Argentieri, O'Melveny & Myers LLP, New York, New York; Sara Zdeb, O'Melveny & Myers LLP, Washington, D.C.; for Plaintiffs-Appellees National Family Planning and Reproductive Health Association, Feminist Women's Health Center. Deborah Oyer M.D., and Teresa Gall.

## ORDER

PER CURIAM:

## BACKGROUND

In 1970, Congress enacted Title X of the Public Health Service Act ("Title X") to create a limited grant program for certain types of pre-pregnancy family planning services. *See* Pub. L. No. 91-572, 84 Stat. 1504 (1970). Section 1008 of Title X, which has remained unchanged since its enactment, is titled "Prohibition of Abortion," and provides:

> None of the funds appropriated under this subchapter shall be used in programs where abortion is a method of family planning.

42 U.S.C. § 300a-6.

In 1988, the Department of Health and Human Services ("HHS") explained that it "interpreted [§] 1008 . . . as prohibiting Title X projects from in any way promoting or encouraging abortion as a method of family planning," and "as requiring that the Title X program be 'separate and distinct' from any abortion activities of a grantee." 53 Fed. Reg. at 2923. Accordingly, HHS promulgated regulations forbidding Title X grantees from providing counseling or referrals for, or otherwise encouraging, promoting, or advocating abortion as a method of family planning. *Id.* at 2945. To prevent grantees from evading these restrictions, the regulations placed limitations on the list of medical providers that a program must offer patients as part of a required referral for prenatal care. *See id.* Such a list was required to exclude providers whose principal business is the provision of abortions, had to include providers who do not provide abortions, and could not weigh in favor of

providers who perform abortions. *Id.* at 2945. The regulations also required grantees to keep their Title X funded projects "physically and financially separate" from all abortion-related services that the grantee might also provide (the "physical-separation" requirement). *Id.*

In 1991, the Supreme Court upheld the 1988 regulations against a challenge in *Rust v. Sullivan*, 500 U.S. 173 (1991). *Rust* held that § 1008 of Title X was ambiguous as to whether grantees could counsel abortion as a family planning option and make referrals to abortion providers. *Id.* at 184. Applying deference under *Chevron, USA, Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–43 (1984), the Supreme Court found that the 1988 regulations were a permissible interpretation of § 1008. *Id.* at 184–85. The Supreme Court also held that the 1988 regulations were not arbitrary or capricious because the regulations were justified by "reasoned analysis," that the regulations were consistent with the plain language of Title X, and that they did not violate the First or Fifth Amendments. *Id.* at 198–201.

Several years later (and under a new presidential administration), HHS suspended the 1988 regulations. 58 Fed. Reg. 7455 (1993). HHS finally promulgated new Title X regulations in 2000, which re-interpreted § 1008 as requiring Title X grantees to provide "nondirective"[1] abortion counseling and abortion referrals upon request. 65 Fed. Reg. 41270–79. The 2000 regulations also

---

[1] Under the 2000 regulations, "nondirective" counseling meant the provision of "factual, neutral information about any option, including abortion, as [medical providers] consider warranted by the circumstances, . . . [without] steer[ing] or direct[ing] clients toward selecting any option." 65 Fed. Reg. 41270–01.

eliminated the 1988 regulations' physical-separation requirement. *Id.*

In 2019, HHS once again revised its Title X regulations, promulgating regulatory language (the "Final Rule") that substantially reverts back to the 1988 regulations. 84 Fed. Reg. 7714. Under the Final Rule, Title X grantees are prohibited from providing referrals for, and from engaging in activities that otherwise encourage or promote, abortion as a method of family planning. *Id.* at 7788–90. Providers are required to refer pregnant women to a non-abortion pre-natal care provider, and may also provide women with a list of other providers (which may not be composed of more abortion providers than non-abortion providers). *See id.* at 7789. Notably, however, the Final Rule is less restrictive than the 1988 regulations: it allows (but does not require) the neutral presentation of abortion information during nondirective pregnancy counseling in Title X programs. *Id.* The Final Rule also revives the 1988 regulations' physical-separation requirement, imposes limits on which medical professionals can provide pregnancy counseling, clarifies the previous requirement that family planning methods be "medically approved," and creates a requirement that providers encourage family participation in decisions. *Id.* at 7789.

The Final Rule was scheduled to take effect on May 3, 2019, although grantees would have until March 4, 2020, to comply with the physical-separation requirement. *Id.* at 7714. But a group of state governments and existing Title X grantees ("Plaintiffs") challenged the Final Rule in federal court in three states (California, Washington, and Oregon), and sought preliminary injunctive relief. The district courts in all three states granted Plaintiffs' preliminary injunction motions on nearly identical grounds. *See Washington v.*

*Azar*, 19-cv-3040, 2019 WL 1868632 (E.D. Wash. Apr. 25, 2019); *Oregon v. Azar*, 19-cv-317, 2019 WL 1897475 (D. Oregon Apr. 29, 2019); *California v. Azar*, 19-cv-1184, 19-cv-1195, 2019 WL 1877392 (N.D. Cal. Apr. 26, 2019). As a result of the three preliminary injunctions, the Final Rule has not gone into effect.

HHS appealed all three preliminary injunction orders to this court, and filed motions to stay the injunctions pending a decision on the merits of its appeals. Because the three motions for a stay pending appeal present nearly identical issues, we consider all three motions jointly.

## ANALYSIS

In ruling on a stay motion, we are guided by four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 434 (2009) (internal quotation marks omitted). Although review of a district court's grant of a preliminary injunction is for abuse of discretion, *Southwest Voter Registration Education Project v. Shelley*, 344 F.3d 914, 918 (9th Cir. 2003), "[a] district court by definition abuses its discretion when it makes an error of law," *Koon v. United States*, 518 U.S. 81, 100 (1996).

## I.

We conclude that the Government is likely to prevail on its challenge to the district courts' preliminary injunctions based on their findings that the Final Rule is likely invalid as

both contrary to law and arbitrary and capricious under 5 U.S.C. § 706(2)(A).

As a threshold matter, we note that the Final Rule is a reasonable interpretation of § 1008. Congress enacted § 1008 to ensure that "[n]one of the funds appropriated under this subchapter shall be used in programs where abortion is a method of family planning." 42 U.S.C. § 300a-6. If a program promotes, encourages, or advocates abortion as a method of family planning, or if the program refers patients to abortion providers for family planning purposes, then that program is logically one "where abortion is a method of family planning." Accordingly, the Final Rule's prohibitions on advocating, encouraging, or promoting abortion, as well as on referring patients for abortions, are reasonable and in accord with § 1008. Indeed, the Supreme Court has held that § 1008 "plainly allows" such a construction of the statute. *Rust*, 500 U.S. at 184 (upholding as a reasonable interpretation of § 1008 regulations that (1) prohibited abortion referrals and counseling, (2) required referrals for prenatal care, (3) placed restrictions on referral lists, (4) prohibited promoting, encouraging, or advocating abortion, and (5) mandated financial and physical separation of Title X projects from abortion-related activities). The text of § 1008 has not changed.

## II.

Because *Rust* largely forecloses any attempt to argue that the Final Rule is not a reasonable interpretation of the text of § 1008, the district courts instead relied on two purportedly intervening laws that they say likely render the Final Rule "not in accordance with law." 5 U.S.C. § 706(2)(A). The first is an "appropriations rider" that Congress has included in every HHS appropriations act since 1996. The 2018 version states:

> For carrying out the program under [T]itle X of the PHS Act to provide for voluntary family planning projects, $286,479,000: Provided, [t]hat amounts provided to said projects under such title shall not be expended for abortions, *that all pregnancy counseling shall be nondirective*, and that such amounts shall not be expended for any activity (including the publication or distribution of literature) that in any way tends to promote public support or opposition to any legislative proposal or candidate for public office.

132 Stat 2981, 3070–71 (2018) (emphasis added). The second is an ancillary provision of the Affordable Care Act (ACA), located within a subchapter of the law entitled "Miscellaneous Provisions," which reads:

> Notwithstanding any other provision of this Act, the Secretary of Health and Human Services shall not promulgate any regulation that—
>
> (1) creates any unreasonable barriers to the ability of individuals to obtain appropriate medical care;
>
> (2) impedes timely access to health care services;
>
> (3) interferes with communications regarding a full range of treatment options between the patient and the provider;

(4) restricts the ability of health care providers to provide full disclosure of all relevant information to patients making health care decisions;

(5) violates the principles of informed consent and the ethical standards of health care professionals; or

(6) limits the availability of health care treatment for the full duration of a patient's medical needs.

Pub. L. No. 111-148, title I, § 1554 (42 U.S.C. § 18114) ("§ 1554").

These two provisions could render the Final Rule "not in accordance with law" only by impliedly repealing or amending § 1008, or by directly contravening the Final Rule's regulatory provisions.

First, we conclude that neither law impliedly repealed or amended § 1008. *See Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 663 (2007) ("[E]very amendment of a statute effects a partial repeal to the extent that the new statutory command displaces earlier, inconsistent commands."). "[R]epeals by implication are not favored and will not be presumed unless the intention of the legislature to repeal is clear and manifest." *Id.* at 662 (internal quotation marks and alterations omitted); *United States v. Madigan*, 300 U.S. 500, 506 (1937) ("[T]he modification by implication of the settled construction of an earlier and different section is not favored."). Indeed, "[w]e will not infer a statutory repeal unless the later statute expressly contradict[s] the original act or unless such a construction is

absolutely necessary . . . in order that [the] words [of the later statute] shall have any meaning at all." *Nat'l Ass'n of Home Builders*, 551 U.S. at 662.

Plaintiffs admit that there is no irreconcilable conflict between § 1008 and either the appropriations rider or § 1554 of the ACA. *E.g.*, California State Opposition to Motion for Stay at p. 14; Essential Access Opposition to Motion for Stay at p.14. And we discern no "clear and manifest" intent by Congress to amend or repeal § 1008 via either of these laws—indeed, neither law even refers to § 1008. The appropriations rider mentions abortion only to prohibit appropriated funds from being expended for abortions; and § 1554 of the ACA does not even *mention* abortion.

As neither statute impliedly amended or repealed § 1008, the question is therefore whether the Final Rule is nonetheless "not in accordance with law" because its provisions are incompatible with the appropriations rider or § 1554 of the ACA. 5 U.S.C. § 706(2)(A). We think that HHS is likely to succeed on its challenge to the district courts' preliminary injunctions because the Final Rule is not contrary to either provision.

The appropriations rider conditions HHS funding on a requirement that no Title X funds be expended on abortion, and that "all pregnancy counseling shall be nondirective." Pub. L. No. 115-245, div. B, tit. II, 132 Stat 2981, 3070–71 (2018). (The plain text of the rider actually seems to *reinforce* § 1008's restrictions on funding abortion-related activities.)

The district courts held that the Final Rule's counseling and referral requirements directly conflicted with the appropriations rider's "nondirective" mandate. But its mandate is *not* that nondirective counseling be given in

every case. It is that such counseling as is given shall be nondirective. The Final Rule similarly does not require that any pregnancy counseling be given, only that if given, such counseling shall be nondirective (and may include neutrally-presented information about abortion). 84 Fed. Reg. 7716 ("Under the [F]inal [R]ule, the Title X regulations no longer require pregnancy counseling, but permits the use of Title X funds in programs that provide pregnancy counseling, so long as it is nondirective."). The Final Rule is therefore not in conflict with the appropriations rider's nondirective pregnancy counseling mandate.

Although the Final Rule *does* require the provision of referrals to non-abortion providers, *id.* at 7788–90, such referrals do not constitute "pregnancy counseling." First, providing a referral is not "counseling." HHS has defined "nondirective counseling" as "the meaningful presentation of options where the [medical professional] is not suggesting or advising one option over another," 84 Fed. Reg. at 7716, whereas a "referral" involves linking a patient to another provider who can give further counseling or treatment, *id.* at 7748. The Final Rule treats referral and counseling as distinct terms, as has Congress and HHS under previous administrations. *See, e.g.*, 42 U.S.C. § 300z-10; 53 Fed. Reg. at 2923; 2928–38 (1988); 65 Fed. Reg. 41272–75 (2000). We therefore conclude that the Final Rule's referral requirement is not contrary to the appropriations rider's nondirective pregnancy counseling mandate.[2]

---

[2] But to the extent there is any ambiguity, "when reviewing an agency's statutory interpretation under the APA's 'not in accordance with law' standard, . . . [we] adhere to the familiar two-step test of *Chevron*." *Nw. Envtl. Advocates v. U.S. E.P.A.*, 537 F.3d 1006, 1014 (9th Cir. 2008). Applying *Chevron* deference, we would conclude that

But even if referrals are included under the rubric of "pregnancy counseling," it is not clear that referring a patient to a non-abortion doctor is necessarily "directive." Nondirective counseling does not require equal treatment of all pregnancy options—rather, it just requires that a provider not affirmatively endorse one option over another. 84 Fed. Reg. at 7716. When Congress wants specific pregnancy options to be given equal treatment, it knows how to say so *explicitly*. For example, Congress has mandated that "adoption information and referrals" shall be provided "on an equal basis with all other courses of action included in nondirective counseling." 42 U.S.C. § 254c-6(a)(1) (emphasis added). If "nondirective" already meant that all pregnancy options (including adoption) shall be given equal treatment, it would render meaningless Congress's explicit instruction that adoption be treated on an *equal basis* with other pregnancy options. "[C]ourts avoid a reading that renders some words altogether redundant." Scalia, Antonin, and Garner, Bryan A., Reading Law: The Interpretation of Legal Texts (2012) 176. Congress has enacted no such statutory provision explicitly requiring the equal treatment of abortion in pregnancy counseling and referrals.[3]

We next consider § 1554 of the ACA. As a threshold matter, it seems likely that any challenge to the Final Rule

---

HHS's treatment of counseling and referral as distinct concepts is a reasonable interpretation of the applicable statutes.

[3] But as discussed above, to the extent there is any ambiguity as to whether the appropriation rider's nondirective mandate means that Title X grantees must be allowed to provide referrals to abortion providers on an equal basis with non-abortion providers, we would defer to HHS's reasonable interpretation under *Chevron* that referral to non-abortion providers is consistent with the provision of nondirective pregnancy counseling.

relying on § 1554 is waived because Plaintiffs concede that HHS was not put on notice of this specific challenge during the public comment period, such that HHS did not have an "opportunity to consider the issue." *Portland Gen. Elec. Co. v. Bonneville Power Admin.*, 501 F.3d 1009, 1024 (9th Cir. 2007) ("The waiver rule protects the agency's prerogative to apply its expertise, to correct its own errors, and to create a record for our review."). Although some commenters stated that the proposed Final Rule was contrary to the ACA *generally*, and still others used generic language similar to that contained in § 1554, preservation of a challenge requires that the "specific argument" must "be raised before the agency, not merely the same general legal issue." *Koretoff v. Vilsack*, 707 F.3d 394, 398 (D.C. Cir. 2013) (per curiam). Although "agencies are required to ensure that they have authority to issue a particular regulation," they "have no obligation to anticipate every conceivable argument about why they might lack such statutory authority." *Id.* at 398.

But even if this challenge were preserved, it seems likely that § 1554 does not affect § 1008's prohibition on *funding* programs where abortion is a method of family planning. Section 1554 prohibits "creat[ing] any unreasonable barriers to the ability of individuals to obtain appropriate medical care," "imped[ing] timely access to health care services," "interfer[ing] with communications regarding a full range of treatment options between the patient and the provider," "restrict[ing] the ability of health care providers to provide full disclosure of all relevant information to patients making health care decisions," "violat[ing] the principles of informed consent and the ethical standards of health care professionals," and "limit[ing] the availability of health care treatment for the full duration of a patient's medical needs." 42 U.S.C. § 18114. But as the Supreme Court noted in *Rust*, there is a clear distinction between affirmatively impeding

or interfering with something, and refusing to subsidize it. *Rust*, 500 U.S. at 200–01. In holding that the 1988 regulations did not violate the Fifth Amendment, the Supreme Court reasoned that "[t]he Government has no constitutional duty to subsidize an activity merely because the activity is constitutionally protected," and that the Government "may validly choose to fund childbirth over abortion and implement that judgment by the allocation of public funds for medical services relating to childbirth but not to those relating to abortion." *Id.* at 201. The Government's "decision to fund childbirth but not abortion places no governmental obstacle in the path of a woman who chooses to terminate her pregnancy, but rather, by means of unequal subsidization of abortion and other medical services, encourages alternative activity deemed in the public interest." *Id.* (internal quotations and citations omitted). Indeed, the Supreme Court has recognized that "[t]he difficulty that a woman encounters when a Title X project does not provide abortion counseling or referral leaves her in no different position than she would have been if the Government had not enacted Title X." *Id.* at 202. *Rust*'s reasoning is equally applicable to counter the district courts' conclusions that the Final Rule is invalidated by § 1554. Title X is a limited grant program focused on providing pre-pregnancy family planning services—it does not fund medical care for pregnant women. The Final Rule can reasonably be viewed as a choice to subsidize certain medical services and not others.[4]

---

[4] The preamble to § 1554 also suggests that this section was not intended to restrict HHS interpretations of provisions outside the ACA. If Congress intended § 1554 to have sweeping effects on all HHS regulations, even those unrelated to the ACA, it would have stated that § 1554 applies "notwithstanding any other provision *of law*," rather than

### III.

The district courts also held that the Final Rule likely violates the Administrative Procedure Act (APA)'s prohibition on "arbitrary and capricious" regulations. 5 U.S.C. § 706(2)(A). "'Arbitrary and capricious' review under the APA focuses on the reasonableness of an agency's decision-making process." *CHW W. Bay v. Thompson*, 246 F. 3d 1218, 1223 (9th Cir. 2001) (emphasis in original). But "[t]he scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." *Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). We think that is precisely what the district courts did.

To find that the Final Rule's enactment was arbitrary and capricious, the district courts generally ignored HHS's explanations, reasoning, and predictions whenever they disagreed with the policy conclusions that flowed therefrom.

For example, with respect to the physical separation requirement, the district courts ignored HHS's reasoning for its re-imposition of that requirement (which was approved by *Rust*): that physical separation would ensure that Title X funds are not used to subsidize abortions via co-location of Title X programs in abortion clinics. *See* 84 Fed. Reg. at 7763–68. HHS's reasoning included citation to data suggesting "that abortions are increasingly performed at sites that focus primarily on contraceptive and family

---

"[n]otwithstanding any other provision *of this Act*." *See, e.g.*, *Andreiu v. Ashcroft*, 253 F.3d 477, 482 (9th Cir. 2001) (holding that the phrase "notwithstanding any other provision of law" in 8 U.S.C. § 1252(f)(2) meant that the provision "trumps any contrary provision elsewhere in the law").

planning services—sites that could be recipients of Title X funds." *Id.* at 7765. Similarly, the district courts ignored HHS's primary reasoning for prohibiting abortion counseling and referrals: that such restrictions are required by HHS's reasonable reading of § 1008 (again, approved by *Rust*). *Id.* at 7746–47. Further, the district courts ignored HHS's consideration of the effects that the Final Rule would likely have on the number of Title X providers, and credited Plaintiffs' speculation that the Final Rule would "decimate" the Title X provider network, rather than HHS's prediction—based on evidence cited in the administrative record—"that honoring statutory protections of conscience in Title X may increase the number of providers in the program," by attracting new providers who were previously deterred from participating in the program by the former requirement to provide abortion referrals. *See id.* at 7780. Such predictive judgments "are entitled to particularly deferential review." *Trout Unlimited v. Lohn*, 559 F.3d 946, 959 (9th Cir. 2009). With respect to the Final Rule's definition of "advanced practice provider," and its provision on whether family planning methods must be "medically approved," HHS reasoned that these provisions would clarify subjects that had caused confusion in the past. 84 Fed. Reg. at 7727–28, 32. Although the district courts insist that HHS failed to consider that the Final Rule requires providers to violate medical ethics, HHS did consider and respond to comments arguing just that. *See id.* at 7724, 7748. HHS similarly considered the costs of compliance with the Final Rule. *Id.* at 7780.

In light of the narrow permissible scope of the district court's review of HHS's reasoning under the arbitrary and capricious standard, we conclude that HHS is likely to prevail on its argument that the district court erred in

concluding that the Final Rule's enactment violated the APA.[5]

IV.

The remaining factors also favor a stay pending appeal. HHS and the public at large are likely to suffer irreparable harm in the absence of a stay, which are comparatively greater than the harms Plaintiffs are likely to suffer.

Absent a stay, HHS will be forced to allow taxpayer dollars to be spent in a manner that it has concluded violates the law, as well as the Government's important policy interest (recognized by Congress in § 1008) in ensuring that taxpayer dollars do not go to fund or subsidize abortions. As the Supreme Court held in *Rust*, "the government may 'make a value judgment favoring childbirth over abortion, and . . . implement that judgment by the allocation of public funds," and by "declining to 'promote or encourage abortion.'" *Rust*, 500 U.S. at 193. Additionally, forcing HHS to wait until the conclusion of a potentially lengthy appeals process to implement the Final Rule will necessarily result in predictable administrative costs, and will beget significant uncertainty in the Title X program.

The harms that Plaintiffs would likely suffer if a stay is granted are comparatively minor. The main potential harms that Plaintiffs identify are based on their prediction that implementation of the Final Rule will cause an immediate

---

[5] The district court in Washington also briefly stated that the Final Rule was likely invalid because it "violates the central purpose of Title X, which is to equalize access to comprehensive, evidence-based, and voluntary family planning." Washington Preliminary Injunction Order at 15. But this conclusion is foreclosed by the existence of § 1008, and by the Supreme Court's contrary finding in *Rust*.

and steep decline in the number of Title X providers.  But these potential harms obviously rely on crediting Plaintiffs' predictions about the effect of implementing the Final Rule, over HHS's predictions that implementation of the final rule will have the *opposite* effect.  As described above, we think that HHS's predictions—supported by reasoning and evidence in the record (84 Fed. Reg. at 7780)—is entitled to more deference than Plaintiffs' contrary predictions.  While some Title X grantees will certainly incur financial costs associated with complying with the Final Rule if the preliminary injunctions are stayed, we think that harm is minor relative to the harms to the Government described above.

## V.

Because HHS and the public interest would be irreparably harmed absent a stay, harms to Plaintiffs from a stay will be comparatively minor, and HHS is likely to prevail in its challenge of the preliminary injunction orders before a merits panel of this court (which is set to hear the cases on an expedited basis), we conclude that a stay of the district courts' preliminary injunction orders pending appeal is proper.

The motion for a stay pending appeal is **GRANTED**.